IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

CANAL INSURANCE
COMPANY,

    PLAINTIFF,

vs.                                                CASE NO. CV 07-J-1339-NE

DIXIE MIDWEST EXPRESS,
CHARLES E. JONES, JR., and
PATRICIA BALDWIN,

    DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court is defendant Patricia Baldwin's motion for summary judgment (doc. 30), defendant Baldwin's memorandum in support of her motion (doc. 31), plaintiff Canal Insurance Company's motion for summary judgment (doc. 32), plaintiff's memorandum of law in support of said motion (doc. 33), defendant Baldwin's evidentiary submissions (doc. 34), defendant Charles Jones' response to plaintiff's motion for summary judgment (doc. 35), plaintiff's response to defendant Baldwin's motion (doc. 36), defendant Baldwin's opposition to plaintiff's motion (doc. 37), plaintiff's reply to Jones' response in opposition (doc. 39), Baldwin's reply in support of her motion (doc. 42), and plaintiff's reply to Baldwin's response in opposition (doc. 43). The court also has before it defendant Charles Jones' request for oral argument (doc. 38), Patricia Baldwin's request for oral argument (doc. 44)

and plaintiff's request for oral argument (doc. 45).  Having considered said requests, and being of the opinion that oral argument would not be of substantial assistance to the court, the requests for oral argument (docs. 38, 44 and 45) be and hereby are **DENIED**.

The plaintiff filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, asserting this court has diversity jurisdiction under 28 U.S.C. § 1332. Complaint, ¶¶ 5-6.  The plaintiff seeks to have this court determine whether its policy of insurance issued to Dixie Midwest Express, Inc.,[1] for coverage on a 2001 Freightliner tractor, provides coverage for the claims of defendant Baldwin, currently pending in the Circuit Court of Smyth County, Virginia.  In the state court action, Patricia Baldwin seeks to recover for injuries she sustained when the 2001 Freightliner, operated by Charles Jones, collided with the rear of another vehicle. Complaint, ¶¶ 10-11.  *See also* Exhibit 2 to Baldwin's evidentiary submissions, *Baldwin v. Vu, et al;* depo. of Baldwin, at 47.  The plaintiff here is defending Charles Jones in the Virginia action, under reservation of rights.  Exhibit F to plaintiff's motion for summary judgment (doc. 32).

### FACTUAL BACKGROUND

---

[1] On November 28, 2007, the court entered a default judgment against defendant Dixie Midwest Express (doc. 13).  In that default judgment, the court found that the plaintiff had no obligation to provide coverage to Dixie Midwest Express for the claims at issue in the underlying litigation.

The court finds the relevant and undisputed facts of this case to be as follows:

Plaintiff Canal Insurance Company ("Canal") issued a Basic Automobile Liability Policy to defendant Dixie Midwest Express with an effective date of July 1, 2004, until canceled. Exhibit A to plaintiff's motion (doc. 32). That policy covered the tractor driven by defendant Charles E. Jones, Jr. ("Jones"), an employee of defendant Dixie Midwest Express ("Dixie"), and the fiancé of defendant Patricia Baldwin ("Baldwin").[2] Jones depo. at 15, 18-19, 22-23. On January 7, 2007, while working for defendant Dixie, defendant Jones was involved in an accident. Jones depo. at 11, 15.

Jones specifically sought employment that allowed him to have a rider in the truck with him at the time he became an employee of defendant Dixie so that Baldwin could ride with him. Jones depo. at 25-26. She rode with him "24/7." Jones depo. at 30-31, 59; Baldwin depo. at 11-12, 21-22. Baldwin made the call-ins, filled out the log books, signed off on fuel receipts, talked to customers sometimes, and sometimes dealt with the lead mechanic on dispatch issues. Jones depo. at 59, 70-72, 74-75, 78; Baldwin depo. at 22, 26, 44. The "call-ins" involved calling dispatch at Dixie to report their location. Jones depo. at 60. Jones, Melissa Hall at Dixie and another Dixie employee taught Baldwin how to fill out the log books. Jones depo. at

---

[2]Baldwin and Jones refer to each other both as "fiancé," and "husband and wife" in their respective pleadings.

64-65; Baldwin depo. at 27-30.  Baldwin would also let customers know the load had arrived and find out to which dock to deliver it.  Jones depo. at 67.  She sometimes took the paperwork for a load into a business while Jones drove to the shipping dock.  Baldwin depo. at 32-33, 36-37.

Baldwin was not an employee of Dixie and was not paid for her assistance.  Jones depo. at 76-77, 91, 97; Baldwin depo. at 46, Baldwin II depo. at 60.  At the time of the accident, Baldwin had permission from defendant Dixie to be in the truck as a passenger.  Jones depo. at 75-76; Baldwin depo. at 17-19, 45.  She stated "I was working with him in the truck, but that's not necessarily employment."  Baldwin II depo. at 15.

On the date of the accident, Jones was driving for Dixie, having left Knoxville that morning.  Baldwin II depo. at 28.  It began snowing somewhere in Virginia.  Baldwin II depo. at 28.  The snow became deep, Jones slowed down, and a truck passed them and sprayed snow across the windshield.  Baldwin II depo. at 29.  When Baldwin looked up, all she could see was the back of another truck, and Jones braking, and then she woke up in the hospital.  Baldwin II depo. at 29-30; 111.  Baldwin had twelve surgeries due to her injuries, which included being thrown from the truck and suffering burns.  Baldwin II depo. at 30, 36-40, 43-45.  She is uninsured.  Baldwin II depo. at 59.

Plaintiff asserts that under the insurance policy in effect at the time of the accident, no coverage exists for defendant Baldwin's injuries, based on an occupant hazard exclusion. Fleming depo. at 41. The relevant exclusion states:

> It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability does not apply to Bodily Injury including death at any time resulting therefrom, sustained by any person while in or upon, entering or alighting from the automobile.
>
> It is further agreed that, in the event the company shall, because of provision of the Federal or State statutes become obligated to pay any sum or sums of money because of such bodily injury or death resulting therefrom, the insured agrees to reimburse the company for any and all loss, costs and expenses paid or incurred by the company.

Defendant exhibit 3 to Fleming depo. According to Fleming, this exclusion is designed to prevent liability coverage from applying to individuals inside, and getting into and out of the covered vehicle. Fleming depo. at 44, 50. Because Baldwin was in the truck at the time of the accident, the endorsement is applicable and there is no coverage. Fleming depo. at 56-57.

Additionally, Fleming does not believe that Baldwin is within the class of persons intended to be covered by the MC-90 endorsement to the policy, which provides coverage to individuals using the highways who are not within the trucking industry. Fleming depo. at 60-62, 68-69; defendant exhibit 4 to Fleming depo.

## SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986); *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F .3d 1139, 1143 (11th Cir.2008). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505,

2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

## LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the nonmoving party and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the pending motions.

The parties agree that Alabama law controls the insurance contract in question. The court first considers whether, under the language of the insurance policy and the allegations in the state court complaint, there could be coverage under the Canal policy. The parties seemingly agree that the Occupant Hazard Exclusion, on its face, excludes coverage. However, defendants Baldwin and Jones both argue that the MCS-90 endorsement sets forth an obligation for Canal to provide coverage should Baldwin prevail on her claims against defendants Jones and Dixie in the Virginia state court action. Baldwin's memorandum, at 7. Additionally, Baldwin and Jones both argue that the Occupant Hazard Exclusion is void as against public policy.

**The MCS-90 Endorsement**

The Federal Motor Carrier Safety Regulations require minimum levels of insurance for motor carriers engaged in the interstate transportation of property. See 49 C.F.R. § 387. To ensure compliance, the Interstate Commerce Commission prescribes a form endorsement, the MCS-90. That endorsement states:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy.... Such insurance as is afforded for public liability does not apply to injury to or death of the insured's employees while engaged in the court of their employment, or property transported by the insured, designated as cargo.
>
> It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described.... However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of this policy except for the agreement contained in this endorsement.
>
> It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein,

>the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payments.

Exhibit 4 to Fleming depo. This endorsement must accompany "any liability policy issued to a registered motor carrier pursuant to 49 U.S.C. §§ 13906(a)(1), 31139(b)(2) and 49 C.F.R. § 387." *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 670 (5th Cir.2001). Interpretation of this endorsement is governed by federal law. *Minter v. Great American Ins. Co. of New York,* 423 F.3d 460, 470 (5th Cir.2005).

Other courts have succinctly explained that "an insurer's responsibilities under the endorsement are triggered when the policy to which it is attached does not provide coverage to the insured." *Canal Ins. Co. v. Underwriters at Lloyd's London,* 435 F.3d 431, 442 n. 4 (3rd Cir.2006). See also *T.H.E. Insurance Co.*, 242 F.3d at 673 (concluding that "when the protection of injured members of the public is not at stake, the MCS-90 and the relevant federal regulations do not address coverage for the purpose of disputes between the insured and the insurer"); *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 858 (9th Cir.2000) (concluding "that the integral purpose of the MCS-90, to protect third party members of the public, is not implicated in a dispute between two insurers"), cert. denied, 534 U.S. 1127, 122 S.Ct. 1063, 151 L.Ed.2d 967 (2002). See also *Larsen Intermodal Servs., Inc.*, 242 F.3d at 671 ("the MCS-90 [endorsement] makes the insurer liable to third parties for any liability resulting from

the negligent use of any motor vehicle by the insured, even if the vehicle is not covered under the insurance policy").

The MCS-90 endorsement defines "public liability" as "liability for bodily injury..." It defines "bodily injury" as "injury to the body, sickness, or disease to any person, including death resulting from any of these." Exhibit 4 to Fleming depo. The endorsement further provides that "[s]uch insurance as is afforded for public liability does not apply to injury to or death of insured's employees while engaged in the course of their employment...." Canal therefore asserts that the endorsement provides no coverage for Baldwin's injuries, even though the Occupant Hazard Exclusion places Baldwin outside coverage otherwise. Canal posits that Baldwin is simply not a member of the "public" intended to be protected by the MCS-90 endorsement, but rather a "statutory employee." Baldwin and Jones respond that Baldwin is not an excluded "employee," and thus coverage is provided by the endorsement.[3]

---

[3]The court notes the speculative nature of these arguments. The MCS-90 endorsement ensures that if Baldwin prevails against Dixie and Jones in the state court case in Virginia, and if there is no other coverage available from which Baldwin could collect a judgment against Dixie and Jones, then the Canal policy must provide payment to Baldwin up to its coverage limits, namely $1,000,000.00, if she is indeed a member of the "public." However, should Baldwin not prevail in the state court case against Dixie or Jones, then the issue of coverage pursuant to the MCS-90 endorsement is moot.

The court finds that, under no sense of the word "employee," was Baldwin an employee of Dixie.[4]  The fact that she accompanied her boyfriend/fiance/husband on all his trips does not enure to the benefit of plaintiff Canal.  If Baldwin was an "employee," she would have been entitled to workers' compensation to cover the medical bills for her extensive injuries.  No such coverage exists for her.  Jones was an employee of Dixie.  His injuries are covered by workers' compensation.  The fact that Baldwin provided free assistance to Jones in his trips does not make her a de facto employee.[5]  She received no benefits and no income from Dixie.

The plaintiff asserts Baldwin was "integral to and a part of the operation of the Dixie Midwest commercial vehicle and the safety functions related to the operation."[6]

---

[4]The plaintiff points to the definition of "employee" from the federal Motor Carrier Safety Regulations, which defines an employee as "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly effects commercial motor vehicle safety."  Plaintiff's reply at 6, citing 49 C.F.R. § 390.5.  This definition clearly does not apply to defendant Baldwin, as she was not "employed" by any "employer."

[5]She is perhaps best described as a "volunteer."  The fact that she performed a valuable service does not automatically render her relationship with Dixie to one of an "employee."  Numerous people undertake otherwise compensable services for free out of a sense of family obligation.  One need look no further than a homemaker, who provides child care services, chef services, and cleaning services.  In no sense is that person an "employee" of the family, even though the exact same services are often performed by family outsiders for compensation.

[6]The sole case cited by plaintiff in support of its argument is inapposite.  In that case, the passenger in the truck was an employee of the lessor of the truck, Crawford.  Pursuant to an agreement, Crawford provided both trucks and drivers to Superior.  The court in *White v. Excalibur Ins. Co.*, 599 F.2d 50, 52 (5th Cir.1979), found that the passenger was entitled to recover workers' compensation benefits as a statutory employee of Superior, as opposed to an independent contractor, pursuant to a Congressional act concerning control of leased vehicles in the trucking industry.  *Id.*, citing 49 U.S.C. § 304(e).

Plaintiff's reply (doc. 39), at 3.  However, the fact that Jones and Baldwin wanted to be together all of the time, the fact that Baldwin assisted Jones without compensation in return, and the fact that Dixie was aware of Jones' and Baldwin's arrangement does not make Baldwin an employee of Dixie.

The purpose of requiring the MCS-90 endorsement is to provide "a broad guaranty that the insurer will pay certain judgments incurred by the insured regardless of whether ... the loss was otherwise excluded by the terms of the policy.  *Miller v. Harco Nat. Ins. Co.,* 241 F.3d 1331, 1333 (11th Cir.2001)(quoting *Century Indem. Co. v. Carlson*, 133 F.3d 591, 594 (8th Cir.1998).  Given that the Occupant Hazard Exclusion otherwise bars coverage for liability for Baldwin's injuries, the court is of the opinion that the MCS-90 endorsement requires plaintiff Canal to provide up to $1,000,000.00 in coverage to Baldwin, should Baldwin recover on her claims against Dixie and Jones in the Virginia state court case.  Accordingly, the court shall deny plaintiff Canal's motion for summary judgment on this issue and grant defendant Baldwin's motion for summary judgment on this issue.

**Public Policy Arguments**

The defendants also argue that the Occupant Hazard Exclusion is against Alabama public policy and hence void. *See* defendant Baldwin's memorandum (doc. 31) at 12; defendant Jones' response (doc. 35) at 7-8. Jones argues that Alabama law requires a motor carrier who operated in Alabama to have general liability coverage for "bodily injuries to or death of any person resulting from the negligent... operation ... of motor vehicles on the highways of this State..." in an amount not less than $100,000.00. *Id. See* Alabama Public Service Commission Motor Carrier General Orders, Rules and Regulations, Rules 4.1 and 4.3, submitted as exhibit 10 to defendant Baldwin's evidentiary submissions (doc. 34). As such, defendant Jones asserts that the Occupant Hazard Exclusion is void to the extent that it precludes coverage up to that $100,000.00 minimum.

Under Alabama law, exclusions are interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy. *Cincinnati Ins. Co. v. Lee Anesthesia, P.C.* 641 So.2d 247, 249 (Ala.1994); *Guaranty National Ins. Co. v. Marshall County Brd. of Ed.,* 540 So.2d 745, 748 (Ala.1989); *Alliance Ins. Co. v. Reynolds*, 494 So.2d 609 (Ala.1986). However, "insurance companies have the right to limit the coverage offered through the use of exclusions in their policies, provided

that those exclusions do not violate a statute or public policy.... If an individual purchases a policy containing an unambiguous exclusion that does not violate a statute or public policy, courts will enforce the contract as written." *Alfa Specialty Ins. Co. v. Jennings,* 906 So.2d 195, 199 (Ala.Civ.App.2005), quoting *Hooper v. Allstate Ins. Co.*, 571 So.2d at 1002.

The court is of the opinion that it need not decide whether or not the Occupant Hazard Exclusion is against the public policy of Alabama, or void in the face of Rules 4.1 and 4.3 for Motor Carriers as promulgated by the Alabama Public Service Commission under the facts of this case. Rule 4.1 applies to "bodily injuries to or the death of any person resulting from negligent or wanton operation, maintenance or use of motor vehicles on the highways of this State...." Rule 4.1, submitted as Baldwin's exhibit 10 (doc. 34). As no "bodily injur[y]" occurred on the "highways of this State" the court finds the issue of whether these Rules preclude application of the Occupant Hazard Exclusion to be irrelevant to the facts before this court.

Having considered the relevant law and the parties' arguments, the court declines to address this issue. The court has specifically found that coverage pursuant to MCS-90 endorsement does exist. Therefore the court declines to delve into public policy arguments.[7]

---

[7]In its initial brief, the plaintiff asserts that, of other jurisdictions which have considered whether the Occupant Hazard Exclusion is enforceable the "overwhelming majority of these

Having considered the foregoing, the court is of the opinion that the plaintiff's motion for summary judgment is due to be denied, as a matter of law, for the reasons set forth herein. The court is further of the opinion that defendant Baldwin's motion for summary judgment is due to be granted, as the court finds that the insurance policy in question provides coverage to defendant Baldwin should she prevail on her state court claims. Therefore, the court shall enter judgment in favor of defendants Baldwin and Jones, and against the plaintiff, on the sole count of the plaintiff's complaint for the reasons set forth herein, the court finding no genuine issues of material fact remain and that the defendants are entitled to judgment in their favor and against the plaintiff as a matter of law.

**DONE** and **ORDERED** this the 22nd day of October, 2008.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

jurisdictions have found that the Occupant Hazard exclusion is only invalidated up to the minimum amount of insurance required by state law..." Plaintiff's memorandum (doc. 33) at 8. The plaintiff then continues in its arguments that the Occupant Hazard Exclusion has been invalidated up to various minimums depending on the state in which suit has been brought. *Id.*, at 8-11.